**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**MANHATTAN DIVISION**
-----------------------------------------------------------------------x
BRIAN M. SANDERS, on behalf of himself and all others
similarly situated,                                                         **Civil Action No.**

                                *Plaintiffs*,
v.                                                                          **CLASS ACTION**
                                                                            **COMPLAINT**
GREYSTAR MANAGEMENT SERVICES, L.P.,
GREP GENERAL PARTNER, LLC,                                                   **JURY TRIAL DEMANDED**
GREYSTAR REAL ESTATE PARTNERS, LLC,
STERN RISK PARTNERS, LLC

                                *Defendants*.
-----------------------------------------------------------------------x

      Brian M. Sanders ("Plaintiff" or "Sanders"), by and through his counsel, Law Offices of

Gus Michael Farinella, PC, as and for his complaint against Defendants, on behalf of himself and

pursuant to Rule 23 of the Federal Rule of Civil Procedure all others similarly situated, files this

Class Action Complaint and Jury Demand complaining of Defendants Greystar Management

Services, L.P., GREP General Partner, LLC, Greystar Real Estate Partners, LLC (collectively

"Greystar"), and Stern Risk Partners as follows:

## I.      PARTIES, JURISDICTION AND VENUE

    1.  Plaintiff, Brian M. Sanders, is an individual natural person who resides in the County of

New York, State of New York, and for diversity purposes, is a citizen of New York.

    2.  Defendant Greystar Management Services, L.P. ("GMS LP") is a Delaware entity with its

principal place of business in Charleston, South Carolina that is registered to conduct business in

the State of New York. For diversity purposes, GMS LP is a citizen of Delaware and South

Carolina. GMS LP may be served with citation and process through its registered agent, CT

Corporation, 111 Eighth Avenue, New York, NY 10011.

3.    Defendant GREP General Partner, LLC ("GREP GP LLC"), the general partner of GMS LP, is a Delaware entity with its principal place of business in Charleston, South Carolina that is registered to conduct business in the State of New York. For diversity purposes, GREP GP LLC is a citizen of Delaware and South Carolina. GREP GP LLC may be served with citation and process at their business address, 11 State Street Charleston, SC 29401.

4.    Defendant Greystar Real Estate Partners, LLC ("GREP"), the sole owners of GREP GP LLC, is a Delaware corporate entity with its principal place of business in Charleston, South Carolina. For diversity purposes, GREP is a citizen of Delaware and South Carolina. GREP may be served with citation and process through its registered agent CT Corporation, 2 Office Part Court, Ste. 103, Columbia, South Carolina 29223.

5.    Stern Risk Partners, LLC, ("SRP") is a Delaware corporate entity with its principal place of business in Atlanta, Georgia. For diversity purposes SRP is a citizen of Delaware and Georgia. SRP may be served with citation and process at its business address, 3400 Peachtree Rd. NE, Suite 830 Atlanta, GA 30326.

6.    Upon information and belief, GMS LP, GREP GP LLC, and GREP are and were, during all or part of the relevant time period, firms or corporations that were the management companies/agencies of the apartment houses in question throughout the United States and in New York, including the Grove at 250 West 19th Street New York, NY 10011 (the "Grove Chelsea").

7.    Upon information and belief, Greystar was retained by the owner of the Grove Chelsea property to serve as the management company for the Grove Chelsea property.

8.    Upon information and belief, BRE FSC Multifamily Borrower LLC ("BRE") was the landlord of the Grove Chelsea property during the relevant time period.

2

9.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff's claims arose in the Southern District of New York, Manhattan Division.

10. This Court has personal jurisdiction over Defendants and subject matter jurisdiction over the causes of action pleaded herein, as Plaintiff's statutory claims, exclusive of interest and costs, are within the jurisdictional amount of the Court.

11. The Court has jurisdiction over the lawsuit under 28 U.S.C. §1332(d) (the Class Action Fairness Act or "CAFA") because all of the Defendants are citizens of a state different from Plaintiff, the amount in controversy exceeds $5 million exclusive of interest and costs, and there are more than 100 members of the class. The Court also has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(2) because Plaintiff and Defendants are citizens of different U.S. states, resulting in complete diversity of citizenship, and the amount in controversy exceeds $75,000.00, excluding interest and costs.

12. This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the state law claims pleaded herein, as the claims arise out of the same case or controversy as the claims giving rise to diversity jurisdiction and jurisdiction under CAFA.

## II.    INTRODUCTION AND BACKGROUND

13. This case seeks to certify a Class of current and former residential tenants of more than one thousand apartment units in hundreds of apartment buildings nationwide and a subclass of current and former residential tenants of more than one thousand apartment units in dozens of apartment buildings in the state of New York in which Defendant Greystar provided management services or was the owner.

14. Plaintiff seeks to recover statutory remedies and damages for himself and the putative Class for the Defendants conduct of illegally obtaining force-placed renters' insurance policies

on Class members apartments and charging the Class members a fee which was added to their base rent for the cost of the premiums for the force-placed renters' insurance policies obtained by Defendants. The force-placed policies were obtained by Defendants in contravention of the terms of the Plaintiff and Class members' leases during the four-year period preceding the date this case was filed (and going forward from the date of filing until a judgment is signed).

15. Greystar, and most large management companies and landlords operating in New York and Nationwide, utilize standardized residential lease forms and addendum forms. This provides these landlords with consistency and predictability with regard to tenant leases, particularly when apartment properties are bought and sold and leases are assigned to new owners and their management companies, which is a routine practice in the industry. As result, all members of the Class who are or were tenants at Greystar owned or managed apartment properties during the class period were subject to uniform material contractual provisions.[1]

## A. GREYSTAR SERVES AS LANDLORD/MANAGER OF APARTMENT COMPLEXES IN NEW YORK AND THE UNITED STATES

16. During the relevant time period, Greystar is believed to offices in "more than 30 cities serving over 140 markets globally, and over 400,000 residences under management…rank[ing] 1st among the top 50 U.S. Apartment Managers according to the 2016 National Multi Housing Council."[2]

17. In New York, Greystar is believed to be the management company for at least 57 apartment properties including, but not limited, to:

      a.  15 Cliff Apartments
      b.  Eleventh and Third Apartments
      c.  The Atlantic Stamp Building Apartments

---

[1] There are differences in lease terms that are non-material to this lawsuit, *e.g.*, rent rate, property name, term of lease and certain amenities unique to a given property.
[2] *See* https://www.Greystar.com/business-services/united-states/property-management

    d.  250 W 19th St. Apartments (the "Grove Chelsea")
    e.  Instrata Gramercy Apartments
    f.  Chelsea 434 W 19th Street Apartments
    g.  The Chelsea Apartments
    h.  Instrata Nomad Apartments
    i.  Midtown 31 E 31st Street Apartments
    j.  Chelsea 337 W 30th Street Apartments
    k.  Chelsea 309 W 30th Street Apartments
    l.  Chelsea 345 W 30th Street Apartments
    m.  Printhouse Lofts Apartments
    n.  44 Berry Apartments
    o.  The Lanthian Apartments
    p.  247N7 Apartments
    q.  250 N 10th Apartments
    r.  Midtown 162 E 61st Street Apartments
    s.  Midtown 341 E 62nd Street Apartments
    t.  Watermark LIC
    u.  Midtown 344 E 63rd Street Apartments
    v.  Renoir House Apartments
    w.  Upper East Side 244 E 75th Street Apartments
    x.  Upper East Side 343 E 76th Street Apartments
    y.  Upper East Side 266 E 78th Street Apartments
    z.  Upper East Side 228 E 81st Street Apartments
    aa. Upper East Side 425 E 84th Street Apartments
    bb. Upper East Side 221 E 82nd Street Apartments
    cc. Upper East Side 402 E 83rd Street Apartments
    dd. Upper East Side 417 E 83rd Street Apartments
    ee. Upper East Side 445 E 8rd Street Apartments
    ff.  Upper East Side 312 E 85th Street Apartments
    gg. Upper East Side 451 E 83rd Street Apartments
    hh. The Cole Apartments
    ii.  Hudson Park South Apartments
    jj.  The Apex at 290 Apartments

18. Greystar is the managing agent and/or owner of hundreds of other apartment properties in other cities and towns in New York and throughout the United States.

19. Greystar has served and continues to serve as the owner and/or managing agent of each of its apartment complexes in the United States during all or part of the relevant time frame. Upon information and belief, Greystar's senior and executive management are proactively involved in supporting and reviewing property management such that Greystar maintains control

over the management of its apartment complexes in the United States and directs the conduct of

its onsite employees.

20. Greystar has served and continues to serve as the owner and/or managing agent of each

of its apartment complexes in New York during all or part of the relevant time frame. Upon

information and belief, Greystar's senior and executive management are proactively involved in

supporting and reviewing property management such that Greystar maintains control over

management of its New York apartment complexes and directs the conduct of its onsite

employees.

21. Greystar's web-based property management system includes, on information and belief,

the system used to bill and collect from tenants unauthorized and illegal force-placed renters'

insurance premiums/fees.  It is believed that Greystar has used and continues to use its

standardized policies and practices to obtain force-placed renters insurance policies on tenants'

apartments in contravention of the terms of the tenant's leases and then charge and collect from

the tenants the unauthorized and illegal renters' insurance premiums/fees.  Further, it is believed

that Greystar used its standardized rent billing system to charge and collect from Plaintiff and

other Class members unauthorized and illegal renters' insurance premiums/fees.  Thus,

Greystar's conduct at issue in this case affects Plaintiff and the putative class.

22. Similarly, SRP's conduct as the issuer of the force-placed renters' insurance policy and

recipient of at least a portion of the unauthorized renters' insurance premiums/fees affects both

Plaintiff and the putative class.

### III.    FACTS AS TO PLAINTIFF, BRIAN M. SANDERS

23. Plaintiff, Brian M. Sanders, is a former resident at the Grove Chelsea property. The physical location of the complex that Plaintiff resided at is 250 West 19th Street, New York, New York 10011.

24. On or about September 29, 2010, Plaintiff, Brian M. Sanders, signed a "Standard Form of Apartment Lease" agreement and numerous addendum forms with 250 W. 19 LLC for a twelve-month term from November 1, 2010 through October 31, 2011. (Attached hereto as **Exhibit A** is a copy of the lease agreement and addendum forms).

25. **Exhibit A** is a Standard Form lease agreement approved by the Real Estate Board of New York, Inc.

26. Plaintiff subsequently renewed his lease agreement several times, the last renewal occurring on October 27, 2016. (Attached hereto as **Exhibit B** is the last lease renewal with Greystar and BRE). The last renewal agreement renewed Plaintiff's lease term from November 1, 2016 through October 31, 2017.

27. Plaintiff's last renewal lease attached as **Exhibit B** with Greystar and BRE sets his monthly base rent at $3,450.00 per month and specifically states, in relevant part, that "[a]ll other terms, covenants and conditions of the Lease shall remain in full force and effect for the duration of the extended term." As such, the renewal lease attached as **Exhibit B** did not change or amend any of the terms of the lease agreement attached as **Exhibit A**.

28. 250 W 19 LLC was the landlord and manager of the Grove Chelsea property at the inception of Plaintiff's lease. Upon information and belief, in or about 2016, BRE became the landlord of the Grove Chelsea property and Greystar became the managing agent for the Grove

Chelsea property. Upon information and belief, Greystar and BRE are successors to all rights and obligations of 250 W 19th LLC and as such are the responsible parties for claims in this case.

29. Neither Plaintiff's original lease (*See* **Exhibit A**) nor any of the subsequent renewals obligated Plaintiff to obtain renters' insurance. Additionally, in the event that the Plaintiff did not obtain a renters' insurance policy on his own, neither Plaintiff's original lease (*See* **Exhibit A**) nor any of the subsequent renewals authorized the landlord, owner, and/or management company/agent to either (1) obtain a force-placed renters' insurance policy on the Plaintiff's apartment and/or (2) charge Plaintiff a fee for said force-placed renters' insurance premiums. Nonetheless, from at least February 2017 through the end of Plaintiff's lease term on October 31, 2017, Greystar obtained a force place renters' insurance policy through SRP on Plaintiff's apartment and charged Plaintiff ten dollars ($10.00) per month for said force-placed renters' insurance policy with SRP. The $10.00 fee charged by Greystar was added to Plaintiff's base rent of $3,450 and Plaintiff was billed $3,460 per month for his base rent instead of the $3,450 amount stated in **Exhibit B**.

30. When the Plaintiff paid his monthly rent, $10.00 of the payment would go toward the force-place renters' insurance policy that Greystar obtained without Plaintiff's permission and in contravention to the terms of the original lease agreement and subsequent renewals.

31. If Plaintiff did not pay the $10.00 fee that Greystar added to this monthly base rent for the force-placed renters' insurance policy obtained in contravention to the terms of his lease, then Plaintiff would be charged a $50.00 late fee.

32. A property owner, landlord, or managing agent cannot surreptitiously obtain a force-placed renters' insurance policy and add the monthly renters' insurance premium/fee to a tenant's base rent, thus unilaterally increasing said tenant's base rent, when the tenant's lease

8

does not contain a provision requiring a tenant to obtain renters' insurance or a provision allowing a property owner, landlord or managing agent to do so in the absence of Plaintiff obtaining a renters' insurance policy.

33. In or about October 2017, after recognizing that their policy and practice of obtaining force placed renters' insurance was illegal and in contravention of the written lease agreements of the Plaintiff and other residents of the Grove Chelsea property, Greystar added a provision in their renewal agreements with tenants of the Grove Chelsea property requiring the tenants to obtain renters' insurance when seeking to have Plaintiff and other tenants sign new renewal leases. Plaintiff did not sign the lease renewal and moved out at the end of his lease term on or about October 31, 2017.

## COUNT I

## BREACH OF CONTRACT
### (Against Greystar)

34. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

35. Plaintiff and all similarly situated class members have or had leases where Greystar was the owner/landlord and/or managing agent.

36. Plaintiff and these Class members' leases are written on uniform rental agreement forms and contain substantially similar provisions. Relevant to this matter, none of the lease agreements or subsequent renewals included any requirement or obligation of the tenants who comprise the proposed Class to obtain a renters' insurance policy, nor did the lease agreements authorize Greystar, or any other the landlord, owner, or managing agent to obtain a force-placed renters' insurance policy in the absence of a tenant obtaining their own renters' insurance policy

and subsequently charge the tenants for the premiums of the force-placed renters' insurance policies.

37. Greystar, without any contractual predicate, surreptitiously obtained a force-placed renters' insurance policy on Plaintiff and Class members' apartments and then added a charge for what they alleged were the monthly premiums of said force-placed renters' insurance policies to the Plaintiff and Class members' monthly billing statements in addition to their original monthly base rent.

38. Greystar charged Plaintiff and the class members amounts for force-placed renters' insurance they obtained without Plaintiff and the Class members permission or consent and in contravention to the terms of their lease agreements. Greystar breached the terms Plaintiff and the Class members' lease agreements by, among other things, obtaining the force-placed renters' insurance policies on Plaintiff and Class members' apartments and then charging Plaintiff and Class members for the alleged premiums of the force-placed renters' policies in addition to the monthly base rent contained in their lease agreements.

39. Plaintiff and the Class members have suffered damages as a result of Greystar's breach of contract.

**WHEREFORE**, Plaintiff, on his own behalf and all similarly situated Class members, seeks compensatory damages resulting from Greystar's breach of contract, as well as injunctive relief preventing them from further violating the terms of the lease agreements. Plaintiff further seeks all relief demanded appropriate by this Court, including attorneys' fees and costs.

## COUNT II

## UNJUST ENRICHMENT
### (Against Greystar)

40. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

41. Greystar received from Plaintiff and Class members benefits in the form of payments for renters' insurance premiums related to force-placed insurance policies that Greystar clandestinely placed on Plaintiff and Class members' apartments in contravention of the written terms of their lease agreements.

42. Greystar entered into an agreement with SRP whereby SRP would provide force-placed renters' insurance policies to Greystar for the portfolio of apartments owned and operated by Greystar. Greystar would then charge Plaintiff and Class members for the force-placed renters' insurance that had been placed on their apartment without their permission and in contravention of the terms of their leases.

43. The payments made by Plaintiff and Class members toward the force-placed renters' insurance premiums directly benefitted Greystar and were taken to the determinant of Plaintiff and the Class members. Both the $10.00 fee for renters' insurance premiums added to Plaintiff's base rent and the fees added to the Class members' base rents were paid by the Plaintiff and the Class members as a part of their monthly rent bill. Upon information and belief, Greystar retained a portion of the amount they charged Plaintiff and the Class members for themselves and the charge added to the Plaintiff and Class members' base rent was not a mere "pass through" fee given to SRP. Therefore, Greystar had the incentive to charge and collect the force-placed insurance premium fees despite the fact that the Plaintiff's and Class members' lease

agreements did not require them to obtain a renters' insurance policy, nor did the lease agreements authorize the landlord, owner, or managing agent to obtain a renters' insurance policy on the tenants' behalf and subsequently charge the tenants for the cost of these unlawfully obtained force-placed renters' insurance premiums.

44. As a result, Plaintiff and the Class members have conferred a benefit on Greystar.

45. Greystar had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

46. Greystar will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each class member is entitled to recover the amount by which Greystar was unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiff, on behalf of himself and all similarly situated Class members, demands an award against Greystar in the amounts by which it has been unjustly enriched at Plaintiff's and the Class Members' expenses, and such other relief as this Court deems just and proper.

<u>**COUNT III**</u>

<u>**UNJUST ENRICHMENT**</u>
<u>**(Against SRP)**</u>

47. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

48. SRP received from Plaintiff and the Class members benefits in the form of monies for renters' insurance premiums related to the force-placed renters' insurance policies Greystar illegally obtained through SRP on the Plaintiff and Class members apartments in contravention to the terms of the Plaintiff's and the Class members' leases.

49. Greystar collected premiums on the force-placed policies that provided coverage in contravention of the express terms of the Plaintiff's and Class members' lease agreements and then provided a portion of said premiums collected to SRP.

50. Greystar acted as a mere conduit for the delivery of at least a portion of the insurance premiums to SRP.

51. SRP had knowledge of this benefit and voluntarily accepted and retained the benefit conferred on them.

52. SRP will be unjustly enriched if they are allowed to retain the aforementioned benefits, and each Class member is entitled to recover the amount by which SRP was unjustly enriched at his or her expense.

**WHEREFORE**, Plaintiff, on behalf of himself and all similarly situated Class members, demands an award against SRP in the amounts by which they have been unjustly enriched at Plaintiff's and the Class members' expenses, and such other relief as this Court deems just and proper.

## COUNT IV

## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (Against SRP)

53. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

54. Plaintiff and the Class members have or had advantageous business and contractual relationships with Greystar and/or their landlords pursuant to their lease agreements. Plaintiff and the Class members have or had legal rights under these lease agreements. For example, neither Plaintiff's nor the Class members' leases required them to obtain renters' insurance

policies nor was Greystar or any other landlord, owner, or managing agent authorized to obtain force-placed renters' insurance policies on the Plaintiff's or the Class members' apartments.

55. SPR had knowledge of the lease agreements and the advantageous business and contractual relationships between Plaintiff and the Class members and Greystar. SPR are not parties to the lease agreements nor are they third-party beneficiaries of the lease agreements. Further, SPR does not have any beneficial or economic interest in the lease agreements.

56. SPR deliberately and without justification interfered with Plaintiff and the Class's rights under their lease agreements, as described above, by, *inter alia*, entering into an exclusive relationship with Greystar, whereby SPR would provide renters' insurance policies whose premiums were paid for by the Plaintiff and Class members in contravention of their lease terms.

57. Plaintiff and the Class members have been damaged as a result of SPR's interference with their lease agreements and the corresponding illegal force-placed insurance charges in contravention of their rights under their lease agreements.

**WHEREFORE**, Plaintiff, on behalf of himself and all Class Members similarly situated, seeks judgment in their favor against SPR for the actual damages suffered by them as a result of SPR's tortious interference. Plaintiff also seeks all costs of litigating this action, including attorneys' fees.

## COUNT V

## VIOLATION OF NEW YORK STATE GENERAL BUSINESS LAW
### (Against Greystar)

58. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

59. New York General Business Law Section 349 reads in relevant part:

14

Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

60. As detailed *supra*, Greystar has engaged in, and continue to engage in, deceptive acts and/or practices while conducting business, and in the furnishing of services, in New York.

61. The polices, acts, and practices alleged herein were intended to result, and did in fact result in payment being received by Defendants from Plaintiff and Class members for force-placed renters' insurance – obtained by Greystar through SRP in contravention of the terms of the Plaintiff's and Class members' lease terms – which in turn were intended to generate unlawful or unfair compensation to Greystar and SRP.

62. Greystar's conduct was consumer-oriented insofar as it affected individual consumers throughout the state of New York who have or had leases in which Greystar was the managing agent and/or landlord.

63. Greystar's acts including, but not limited to, obtaining force-placed renters' insurance policies through SRP in contravention of the terms of the lease agreements between themselves and consumers and subsequently charging the consumers a fee for the force-placed insurance premiums was misleading in a material way because the terms of the lease agreements between Plaintiff and the Class members did not authorize Greystar to obtain force-placed renters' insurance policies and subsequently charge Plaintiff and the Class members for these policies; however, Greystar deliberately misrepresented that they were lawfully entitled to do so.

64. Plaintiff and the Class members have suffered injuries as a result of Greystar's deceptive acts and practices including, but not limited to, the sustaining of monthly charges and fees as a result of Greystar's unlawful acquisition of force-placed renters' insurance policies through SRP in contravention of the Plaintiff's and Class members' lease agreements.

65. Greystar's express representation contained in their monthly billing statements that Plaintiff and the Class members were responsible for the cost of the force-placed renters' insurance policy fees, in addition to their monthly base rent, is likely to mislead an objective consumer acting reasonably under the circumstances. Specifically, a consumer such as Plaintiff that receives a rent bill with an additional $10.00 fee added to the base rent is likely to pay the additional fee, particularly in light of the fact that a failure to pay the fee would result in an additional $50.00 late fee on top of the $10.00 fee.

66. Plaintiff and the Class members have suffered and will continue to suffer irreparable harm if Greystar continues to engage in such deceptive acts and practices.

**WHEREFORE**, Plaintiff, on behalf of himself and all Class Members similarly situated, demands judgment in their favor against Greystar for compensatory damages, pre-and post-judgment interest, attorneys' fees, injunctive and declaratory relief, costs of the litigation and treble damages for Greystar's willful and knowing violation of New York General Business Law Section 349.

## CLASS ALLEGATIONS

**A.     Class Definitions**

67. Plaintiff brings this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of himself and all other persons similarly situated. Plaintiff seeks to represent the following classes:

<u>Nationwide class</u>

68. All persons in the United States who, beginning on January 1, 2014, were charged amounts by Greystar for force-placed renters' insurance in addition to their base rent and who, within the Class Period, either (i) paid to Greystar the fee charged for the force-placed renters'

insurance policy in addition to their base rent or (ii) did not pay to and still owe Greystar amounts for the premiums for the force-place renters' insurance policy. Excluded from the Class are (i) individuals who are or were during the Class Period officers or directors of the Defendants in the Action or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or their spouses of such persons; (iii) all persons who file a timely and proper request to be excluded from the Class. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

<u>New York Subclass as to Count V – New York General Business Law</u>

69. All persons in New York who, beginning on January 1, 2014, were charged amounts by Greystar for a force-placed renters' insurance policy in addition to their base rent and who, within the Class Period, either (i) paid to Greystar the fee charged for the force-placed renters' insurance policy in addition to their base rent or (ii) did not pay to and still owe Greystar amounts for the premiums for the force-place renters' insurance policy. Excluded from the Class are (i) individuals who are or were during the Class Period officers or directors of the Defendants in the Action or any of their respective affiliates; (ii) any justice, judge, or magistrate judge of the United States or any State, their spouses, and persons within the third degree of relationship to either of them, or their spouses of such persons; (iii) all persons who file a timely and proper request to be excluded from the Class. Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

70. Plaintiff reserves the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

71. Defendants subjected Plaintiffs and the respective Class members to the same unfair, unlawful and deceptive practices and harmed them in the same manner.

**B.  Numerosity**

72. The proposed classes are so numerous that joinder of all members would be impracticable. Greystar operates and manages at least fifty-seven apartment buildings in the state of New York and hundreds of apartment buildings nationwide with each apartment building containing hundreds of units. The individual Class members are ascertainable, as the names and addresses of all Class members can be identified in the business records maintained by Defendants. The precise number of Class members for each Class numbers in at least the thousands and can only be obtained through discovery; however, the numbers are clearly more than what can be consolidated into a single complaint such that it would be impractical for each member to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action

**C. Commonality**

73. There are questions of law and fact that are common to the Plaintiff's and Class members' claims. These common questions predominate over any questions that go particularly to any individual member of the Class. Among such common questions of law and fact are the following:

   a.  Whether Defendants charged tenants for force-placed renters' insurance coverage including, but not limited to, insurance coverage that was obtained in contravention of the terms of the lease agreements with the tenants.
   b.  Whether Greystar breached the lease agreements with Plaintiff and the Class by charging them for force-placed renters' insurance.
   c.  Whether Defendants have been unjustly enriched at the expense of the Plaintiff and the Class.
   d.  Whether Greystar obtained and charged force-placed insurance in order to maximize their profits to the detriment of Plaintiff and the Class.

e. Whether an objective consumer would be deceived by Greystar's conduct of surreptitiously obtaining force-placed renters' insurance policies on their apartments and then charging a monthly fee in addition to their base rent for the force-placed renters' insurance policy.

f. Whether SRP intentionally and unjustifiably interfered with Plaintiff's and the Class's rights under their lease agreements by issuing force-placed renters' insurance policies to Greystar and accepting monthly premium payments from the Plaintiff and Class members for the force-placed renters' insurance policies.

g. Whether Plaintiff and the Class members are entitled to damages and/or injunctive relief as a result of Defendants' conduct.

**D. <u>Typicality</u>**

74. Plaintiff is a member of the Classes he seeks to represent. Plaintiff's claims are typical of the respective classes' claims because of the similarity, uniformity and common purpose of the Defendants' unlawful conduct. Each of the class members has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Defendants' wrongful conduct.

**E. <u>Adequacy of Representation</u>**

75. Plaintiff is an adequate representative of the class he seeks to represent and will fairly and adequately protect the interests of that class. Plaintiff is committed to the vigorous prosecution of this action and has retained competent counsel, experienced in class action litigation, to represent him. There is no hostility between Plaintiff and the unnamed Class members. Plaintiff anticipates no difficulty in the management of this litigation as a class action.

76. To prosecute this case, Plaintiff has chosen the undersigned law firm, which is experienced in class action litigation and has the financial and legal resources to meet the costs and legal issues associated with this type of litigation.

**F. <u>Requirements of Fed. R. Civ. P. 23(b)(3)</u>**

77. The questions of law or fact common to Plaintiff's and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class. All

claims by Plaintiff and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured and their deceptive and egregious actions involved in the securing the force-placed policy.

78. Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

79. As a result, when determining whether common questions predominate, courts focus on the liability issue and whether the liability issue is common to the class, as it is in this case. When a court finds that the liability issue is common to the class, as it is here, common questions will be held to predominate over individual questions.

## G. Superiority

80. A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all class members would create an extreme hardship and inconvenience for the affected tenants as they reside all across the United States;
(b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake. As a result, individual class members have no interest in prosecuting and controlling separate actions;
(c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;
(d) The interests of justice will be well-served by resolving the common disputes of potential class members in one forum;
(e) Individual suits would not be cost-effective or economically maintainable as individual actions; and
(f) The action is manageable as a class action.

## H. Requirements of Fed. R. Civ. P 23(b)(1) & (2)

81. Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the class.

82. Defendants have acted or failed to act in a manger generally acceptable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

## JURY DEMAND

83. Plaintiff asserts his right under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Fed. R. Civ. P. 38, a trial by jury on all disputed material fact issues.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff on behalf of himself and all similarly situated individuals demands judgment against Defendants as follows:

(1) Declaring this action to be a proper class action maintainable pursuant to Fed. R. Civ. P. 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and his counsel to be representatives of the Class and the New York Subclass;

(2) Enjoining Defendants from continuing the acts and practices described above;

(3) Awarding damages sustained by Plaintiff and the Class as a result of Greystar's breaches of the subject lease agreement contracts;

(4) Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiff and the Class, together with pre-judgment interest;

(5) Awarding Plaintiff and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff and Class Counsel and experts, and reimbursement of expenses;

(6) Awarding Plaintiff and the New York subclass damages, injunctive relief, attorneys' fees, costs, and treble damages under the New York State General Business Law.

(7) Awarding damages sustained by Plaintiff and the Class as a result of Defendant SRP's

   interference.

(8) Awarding such other and further relief the Court deems just and equitable.


Dated: November 20, 2017
        Floral Park, NY


                              Respectfully submitted,

                              /s/ Randy E. Kleinman
                              Randy E. Kleinman
                              Bar No. 5086665
                              Law Offices of Gus Farinella, P.C.
                              130 West 15th Street, Suite 07M
                              New York, New York 10011
                              (212) 675-6161
                               rek@lawgmf.com

                              /s/ Ryan Gentile
                              Ryan Gentile
                              Law Offices of Gus Farinella, P.C.
                              110 Jericho Turnpike – Suite 100
                              Floral Park, NY 11001
                              (212) 675-6161
                              rlg@lawgmf.com

                              *ATTORNEYS FOR PLAINTIFF*
                              *AND THE PUTATIVE CLASS*